FILED
**January 6, 2015**
Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-14-00199-CV
3555231
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/19/2014 4:39:26 PM
JEFFREY D. KYLE
CLERK

NO. 03-14-000199-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/19/2014 4:39:26 PM
JEFFREY D. KYLE
Clerk

IN THE
COURT OF APPEALS FOR THE
THIRD COURT OF APPEALS DISTRICT
AUSTIN, TEXAS
————————

CHURCH OF SCIENTOLOGY INTERNATIONAL, ET AL.
APPELLANTS

VERSUS

MONIQUE RATHBUN
APPELLEE
————————

FROM THE 207TH JUDICIAL DISTRICT COURT, COMAL COUNTY, TEXAS
CAUSE NO. C2013-1082B, HON. DIB WALDRIP, PRESIDING

---

**APPELLEE'S MOTION FOR LEAVE TO FILE
RESPONSE TO NOTICE OF SUPPLEMENTAL AUTHORITY
OF APPELLANT CHURCH OF SCIENTOLOGY INTERNATIONAL**

---

NOW COMES Appellee Monique Rathbun and files this Motion for Leave to File

Response to Notice of Supplemental Authority of Appellant Church of Scientology

International, and in support thereof would respectfully show the Court as follows:

Appellee Monique Rathbun requests leave to file the attached Response to the

Notice of Supplemental Authority filed by Appellant Church of Scientology

International ("COS"). COS contends that the supplemental authority – a decision

by a California trial court – is relevant to the Court's questions during oral

argument regarding how Texas's anti-SLAPP statute should be applied in cases in which some claims arise from activities protected by the statute and some claims do not. As explained in the proposed Response, a copy of which is attached hereto as Exhibit 1, Appellee does not believe that the California trial court's opinion supports COS's position or adds any clarity to the issues before the Court.

WHEREFORE, Appellee Monique Rathbun prays that this Motion be granted, Appellee's Response to Notice of Supplemental Authority of Church of Scientology International Brief of Appellee be filed in the papers of this appeal, and this Court award her such other and further relief, both general and special, at law or in equity, to which she may be entitled.

Respectfully submitted,

**PULMAN, CAPPUCCIO,**
**PULLEN, BENSON & JONES, LP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Leslie Sara Hyman*
    Elliott S. Cappuccio
    Texas State Bar No. 24008419
    ecappuccio@pulmanlaw.com
    Leslie Sara Hyman
    Texas State Bar No. 00798274
    lhyman@pulmanlaw.com
    Etan Z. Tepperman
    Texas State Bar No. 24088514
    etepperman@pulmanlaw.com

**JEFFREY & MITCHELL, P. C.**
Ray B. Jeffrey
Texas State Bar Number 10613700
2631 Bulverde Road, Suite 105
Bulverde, Texas 78163
(830) 438-8935 Telephone
(830) 438-4958 Facsimile
rjeffrey@sjmlawyers.com

**THE WIEGAND LAW FIRM, P.C.**
Marc F. Wiegand
Texas State Bar No. 21431300
434 North Loop 1604 West, Suite 2201
San Antonio, Texas 78232
(210) 998-3289 Telephone
(210) 998-3179 Facsimile
marc@wiegandlawfirm.com

**ATTORNEYS FOR APPELLEE**
**MONIQUE RATHBUN**

## CERTIFICATE OF CONFERENCE

Pursuant to Texas Rule of Appellate Procedure 10.1(a)(5), I certify that I have conferred with counsel for Appellants, who indicated that they are not opposed to the motion for leave to file.

/s/ Leslie Sara Hyman
Leslie Sara Hyman

I certify that on the 19th day of December 2014, the foregoing Appellant's Motion for Leave to File Response to Notice of Supplemental Authority of Appellant Church of Scientology International has been transmitted by electronic service in accordance with the requirements of the Texas Rules of Appellate Procedure addressed as follows:

Lamont A. Jefferson
HAYNES & BOONE, LLP
112 East Pecan Street, Suite 1200
San Antonio, Texas  78205-1540

Wallace B. Jefferson
Rachel Ekery
ALEXANDER DUBOSE JEFFERSON &
TOWNSEND, LLP
515 Congress Avenue, Suite 2350
Austin, Texas  78701

J. Iris Gibson
HAYNES & BOONE, LLP
600 Congress Avenue, Suite 1300
Austin, Texas  78701

Ricardo Cedillo
Les J. Strieber III
Isaac J. Huron
DAVIS CEDILLO & MENDOZA, INC.
McCombs Plaza, Suite 500
755 East Mulberry Avenue
San Antonio, Texas  78212

George H. Spencer, Jr.
CLEMENS & SPENCER
112 E. Pecan St., Suite 1300
San Antonio, Texas  78205-1531

Jonathan H. Hull
Ashley B. Bowen
REAGAN BURRUS
401 Main Plaza, Suite 200
New Braunfels, Texas  78130

Bert H. Deixler
KENDALL BRILL & KLEIGER LLP
Suite 1725
10100 Santa Monica Boulevard
Los Angeles, California  90067

Stephanie S. Bascon
LAW OFFICE OF STEPHANIE S. BASCON
PLLC
297 West San Antonio Street
New Braunfels, Texas  78130

Gary D. Sarles
O. Paul Dunagan
Sarles & Ouimet
370 Founders Square
900 Jackson Street
Dallas, Texas  75202

Thomas S. Leatherbury
Marc A. Fuller
Vinson & Elkins LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas  75201

*/s/ Leslie Sara Hyman*
Leslie Sara Hyman

# Exhibit 1

# Exhibit 1

No. 03-14-000199-CV

IN THE
COURT OF APPEALS FOR THE
THIRD COURT OF APPEALS DISTRICT
AUSTIN, TEXAS

CHURCH OF SCIENTOLOGY INTERNATIONAL, ET AL.
APPELLANTS

VERSUS

MONIQUE RATHBUN
APPELLEE

FROM THE 207TH JUDICIAL DISTRICT COURT, COMAL COUNTY, TEXAS
CAUSE NO. C2013-1082B, HON. DIB WALDRIP, PRESIDING

**APPELLEE'S RESPONSE TO NOTICE OF SUPPLEMENTAL
AUTHORITY OF APPELLANT CHURCH OF SCIENTOLOGY**

NOW COMES Appellee Monique Rathbun and files this Response to Notice of

Supplemental Authority of Appellant Church of Scientology, respectfully showing

the Court as follows:

Appellant Church of Scientology International ("COS") filed its Notice of

Supplemental Authority to bring to the Court's attention a California trial court's

decision in *Woodward v. Church of Scientology Int'l,* Case No. BC540097, in the

Superior Court for the State of California for the County of Los Angeles.

Appellant COS argues that this opinion supports COS's position that "all of

Ms. Rathbun's claims should be dismissed even if some of them do not arise out of protected activity." Notice at 2.

For several reasons, Ms. Rathbun believes that the cited authority is not helpful to the Court's analysis of the issues before it. First, the trial court's order in *Woodward* is the subject of a motion to reconsider that will not be heard until January 7, 2015. *See* Exhibit A.

Second, the trial court in *Woodward* found that Woodward's "causes of action all arise from Defendants' religious activities," that Woodward's "claims all relate to religious instruction, counseling and related religious services," and that his "religious challenges have infused all of his causes of action and are . . . predominant in his arguments." Ms. Rathbun's claims, on the other hand, relate to stalking and harassment, not religious instruction, counseling, or services. To the extent that she incidentally references COS's arguably protected speech, that speech does not form the basis of her claims.

Third, contrary to COS's position, the courts in California do not hold that where a plaintiff raises some claims that arise from protected activity and some claims that do not arise from protected activity, all of the plaintiff's claims should be dismissed. It is true that the California appellate courts hold that when a plaintiff's cause of action "is based on both protected activity and unprotected activity, it is subject to [dismissal under California's Anti-SLAPP statute] unless

the protected conduct is "merely incidental" to the unprotected conduct."[1] *Haight Ashbury Free Clinics v. Happening House Ventures,* 184 Cal. App. 4th 1539, 1551 (Cal. Ct. App. 2010); *see also Martinez v. Metabolife Internat., Inc.,* 113 Cal. App. 4th 181, 188 (Cal. Ct. App. 2003) ("We conclude it is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute.").

But it does not follow that when one cause of action is subject to dismissal, the entire petition is subject to dismissal. Rather, each claim or cause of action is to be analyzed separately and, at most,[2] only those claims or causes of action that arise from protected acts are subject to dismissal (and even then, only if the plaintiff has insufficient evidence to support them). *See, e.g., Graham-Sult v. Clainos,* 738 F.3d 1131, 1142 (9th Cir. 2013) (holding that to determine whether a cause of action

[1] It does not appear that the California Supreme Court has yet determined whether the California Courts of Appeals are correct in having reached this conclusion.

[2] At least one California Court of Appeals has held that where a plaintiff alleges several causes of action that are factually and legally intertwined and at least one cause of action survives scrutiny under an Anti-SLAPP motion, all the causes of action should go forward. *M. G. v. Time Warner, Inc.,* 89 Cal. App. 4th 623, 637 (Cal. Ct. App. 2001) (holding that because the plaintiffs had "shown the propriety of their invasion of privacy claim . . . it cannot be said their lawsuit is meritless and 'brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances'" so their emotional distress claims also survived).

arises from protected activity the court should "first ask what activities form the basis for <u>each</u> of Plaintiffs' causes of action [and] then ask whether those activities are 'protected,' bringing the cause of action within the scope of the anti-SLAPP statute") (emphasis added); *ComputerXpress, Inc. v. Jackson,* 93 Cal. App. 4th 993, 997-98 (Cal. Ct. App. 2001) (reversing the denial of an Anti-SLAPP motion to dismiss those of the plaintiff's claims that arose from protected activity and for which the plaintiff had failed to show a probability of success but affirming the denial of the motion as to those of the plaintiff's claims that did not arise from protected activity).

For example, in *Graham-Sult v. Clainos,* 738 F.3d 1131 (9th Cir. 2013), the Ninth Circuit reviewed the plaintiffs' complaint and concluded that six of the plaintiffs' causes of action arose from protected activity and were the proper subject of the defendants' Anti-SLAPP motion while other causes of action did not arise from protected activity and could not be subjected to the motion.

Respectfully submitted,

**PULMAN, CAPPUCCIO,
PULLEN, BENSON & JONES, LP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Leslie Sara Hyman*
    Elliott S. Cappuccio
    Texas State Bar No. 24008419
    ecappuccio@pulmanlaw.com
    Leslie Sara Hyman
    Texas State Bar No. 00798274
    lhyman@pulmanlaw.com
    Etan Z. Tepperman
    Texas State Bar No. 24088514
    etepperman@pulmanlaw.com

**JEFFREY & MITCHELL, P. C.**
Ray B. Jeffrey
Texas State Bar Number 10613700
A. Dannette Mitchell
Texas State Bar Number 24039061
2631 Bulverde Road, Suite 105
Bulverde, Texas 78163
(830) 438-8935 Telephone
(830) 438-4958 Facsimile
rjeffrey@sjmlawyers.com
dmitchell@sjmlawyers.com

**THE WIEGAND LAW FIRM, P.C.**
Marc F. Wiegand
Texas State Bar No. 21431300
434 North Loop 1604 West, Suite 2201
San Antonio, Texas  78232
(210) 998-3289 Telephone
(210) 998-3179 Facsimile
marc@wiegandlawfirm.com

**ATTORNEYS FOR APPELLEE
MONIQUE RATHBUN**

# Exhibit A

Vance Ashley Woodward (SBN 231730)
Law Office of Vance Woodward
8335 W. Sunset Blvd., Suite 247
West Hollywood, CA 90069
310-753-0803
vance@woodwardlawfirm.com

Appearing pro per

FILED
Superior Court of California
County of Los Angeles

OCT 2 0 2014

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Moses Soto

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| VANCE WOODWARD,<br><br>               Plaintiff,<br><br>vs.<br><br>CHURCH OF SCIENTOLOGY<br>INTERNATIONAL, et al.,<br><br>               Defendants. | Case No. BC540097<br><br>**NOTICE AND MOTION FOR RECONSIDERATION AND FOR LEAVE TO FILE AN AMENDED COMPLAINT**<br><br>[Filed concurrently with Declaration of Vance Woodward]<br><br>Date: January 7, 2015, 8:30 a.m.<br>Location: Dept. 56<br>Judge: The Honorable Michael Johnson<br><br>Action Filed: March 21, 2014 |

TO THIS HONORABLE COURT AND THE DEFENDANTS: Please take notice that on January 7, 2015, at 8:30 a.m. in Department 56, Plaintiff will move the Court to (1) grant this Motion, (2) revoke its ruling dated October 8, 2014 (the "Ruling"), which granted Defendants' Joint Special Motion And Motion To Strike Each Cause Of Action Of Plaintiff's Complaint [C.C.P. § 425.16] (the "Antislapp Motion"), filed May 29, 2014, (3) deny Defendants' Antislapp Motion and find that CCP § 425.17(c) applies, and (4) grant Plaintiff leave to file an amended complaint. This Motion is brought pursuant to CCP § 1008(a), and is supported by this Notice and Motion, the following Memorandum of Points and Authorities, and the supporting Declaration of Vance Woodward.

October 20, 2014

_____
Vance Woodward
Plaintiff

1

MOTION FOR RECONSIDERATION AND FOR LEAVE TO FILE AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

"[W]hile SLAPP suits 'masquerade as ordinary lawsuits' the conceptual features which reveal them as SLAPP's are that they are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Ericsson GE Mobile Comm. v. CSI Telecomm.*, 49 Cal.App.4th 1591, 1999 (1996). Plaintiff's lawsuit bears none of these hallmarks. The Antislapp Statute, CCP § 425.16, "must be given a reasonable, commonsense meaning, one that is practical (not technical) which upon application will result in attaining the legislative goal, rather than creating mischief or absurdity." *Ericsson GE Mobile Comm.*, 49 Cal.App.4th at 1600-01.

## I.    INTRODUCTION

This lawsuit is between contracting parties and it concerns a private commercial dispute arising from private commercial transactions. Defendants even admit that Plaintiff's Complaint arises from "transaction[s] involving commerce." The Supreme Court ruled that the transactions at issue here are *quid pro quo*, not donative. *Hernandez (Scientology) v. C.I.R.*, 490 U.S. 680 (1989).

Defendants claim religious status; that changes nothing. Religious status does not earn immunity from fraud, breach-of-contract, or intentional infliction of emotional distress. The First Amendment protects speech, not acts. Plaintiff seeks relief for damages arising solely out of Defendants' acts. This lawsuit is not one "arising from any act of that person in furtherance of the person's right of petition or free speech." This is not a slapp suit. Moreover, no adjudication of the truth or untruth of Defendants' (or Plaintiff's) religious beliefs is needed or permitted to resolve this dispute. Therefore, this lawsuit is justiciable by a civil court of law and equity.

Reconsideration of the Court's Ruling is warranted because Plaintiff now raises new or different circumstance and law, and new or different facts that Plaintiff could not, with reasonable diligence, have submitted earlier. After all, among other things, Defendants sandbagged Plaintiff in that they (1) brought two case-dispositive motions together, giving Plaintiff mere days to respond, and (2) requested in their Antislapp Motion that the Court first rule on Defendants' Joint Motion for Order Compelling Religious Arbitration of Plaintiff's Complaint (the "Arbitration Motion"), dated May 29, 2014, which focused on the enforceability of the Enrollment Application. In reasonable

reliance on Defendants' request, Plaintiff fully briefed the enforceability of the Enrollment Application only in Plaintiff's Opposition to the Defendants' Arbitration Motion, filed June 11, 2014. Thereafter, Defendants head-faked Plaintiff by (3) withdrawing their Arbitration Motion at the last second, and (4) resurrecting the enforceability of the Enrollment Application in their Antislapp Reply, filed Sept. 29, 2014.

The Religious Services Enrollment Application, Agreement and General Release (the "Enrollment Application") does not form any part of the at-issue contract because the Enrollment Application is not a contract, not an amendment, and not legally or equitably enforceable. Plaintiff fully briefed this issue in his Opposition to Defendants' Arbitration Motion. Defendants' effectively conceded defeat by taking their Arbitration Motion off calendar at the last second. Plaintiff exercised reasonable diligence. Reconsideration is warranted.

Plaintiff now submits new and different testimony as to the parties' mutual understanding of the contract terms, further documented admissions made by Defendants as to the terms of the at-issue contract, the names of the individual Defendant representatives involved, documentary evidence that Defendants admit this case arises out of "transaction[s] involving commerce," and evidence that the Defendants have done nothing to counter the default law that commands refunds and the return of layaway payments. Finally, Plaintiff requests leave to file an amended complaint.

## II. AUTHORITY

Any party affected by an order may, within 10 days after service of written notice of entry of the order and based upon new or different facts, circumstance, or law, apply to the court to reconsider the matter and modify, amend, or revoke the prior order. CCP § 1008(a).

## III. NEW OR DIFFERENT FACTS, CIRCUMSTANCES, OR LAW

This case does not arise out of "public participation." Defendants privately contracted with Plaintiff to deliver self-help goods and services. They breached the contract. Plaintiff submits the following new and different facts, circumstance, and law relevant to Defendants' Antislapp Motion:

### A. New Or Different Facts

**Further testimony on Scientology's refund policy:** During the twenty-plus years that Plaintiff purchased goods and service from Defendants and their affiliates, those corporations

3

openly espoused a policy of returning funds paid for goods and services on demand. Plaintiff observed that Defendants' return policy is widely known among Scientology customers. Moreover, Defendants' return policy is not just a contract term but also an inducement. It is a promise by which Defendants induce customers such as Plaintiff to pay money to Defendants in exchange for fixed-price self-help goods and services. A statement of one's return policy cannot rationally be deemed religious belief. In reliance on Defendants' stated policy, Plaintiff paid for self-help goods and services from Defendants. A contract was born upon payment: there was an offer, acceptance and consideration. (Declaration of Vance Woodward ("Woodward Decl.") ¶ 6.)

**Further documentation on Scientology's refund policy**: Plaintiff averred that Defendants submitted to the IRS a statement of their refund policy in an application for tax exemption, the relevant portions of which (pp. 10-20 to 10-21) Plaintiff submitted as Plaintiff's Request for Judicial Notice, PRJN-1, on June 11, 2014. Defendants do not deny this averment. They merely contend that the document is an uncertified copy. That is irrelevant. Defendants have had ample opportunity to deny the averment and they have not done so. Their failure to deny, having been given an opportunity to do so, constitutes an admission that they did submit PRJN-1 to the IRS, because a reasonable person would have denied Plaintiff's averment were Plaintiff's averment untrue, rather than quibble about a lack of certification. Consequently, PRJN-1 is admissible as a statement by a party. *In re Neilson's Estate*, 57 Cal.2d 745, 753 (1962), and *Kincaid v. Kincaid*, 197 Cal.4th 75 (2011); Ev. Code § 1220. Moreover, the very existence of PRJN-1 supports a probability that Plaintiff will prevail. In any event, Plaintiff now submits further admissible documentation that articulates Defendants' publicly avowed refund policy. These are statements that Plaintiff can and does attest were made by Defendants to Plaintiff. Plaintiff reasonably relied on these statements in contracting with Defendants. (Woodward Decl. ¶¶ 7-14, Exs. VWD-14 to VWD-18.)

**Evidence of the individuals involved**: During the twenty-plus years that Plaintiff purchased Scientology goods and services, Defendants and other Scientology corporations articulated Scientology's well-known refund policy to Plaintiff and to others in his presence. They did this through dozens of corporate Scientology representatives and publications, including the writings and recordings of L. Ron Hubbard. During the period from 2007 to 2010, the following individuals,

4

soliciited and took money from Plaintiff in exchange for pre-paid fixed-price self-help goods and services: (a) Flag: Michael Braun and Dave Foster; (b) Freewinds: Gavin Potter; (c) WUS dba AOLA: Derek Meyer; (d) WUS dba AOSH: Jarrett Reibl and Joe Bueno; and (e) COSSF: Krista Craigie, Jessica Marcotte, Karilyn Youngman, Kirk Youngman, Stuart Sykes, Rita Krier, Ryan Ellenberg, Elizabeth West, and Jim Fitzgerald. Some of these individuals verbally articulated Defendants' refund policy to Plaintiff, and Plaintiff relied on them. (Woodward Decl. ¶ 15.)

**Defendants admit the contract involves transactions in commerce**: Defendants asserted in Defendants' Arbitration Motion that Plaintiff's purchases constituted transactions involving commerce. Specifically, Defendants asserted in their Arbitration Motion that the Federal Arbitration Act covers this dispute. (Defendants' Arbitration Motion, pp. 13-14; Woodward Decl. ¶ 16.) The FAA applies *only* to a "transaction involving commerce." FAA § 2. Defendants cited *only* this very provision to support their contention that the FAA applies to this dispute. Therefore, Defendants admit that this dispute arises out of transactions involving commerce, *not* religious belief.

**Default law commands refunds**: In a footnote to Defendants Antislapp Reply, filed Sept. 29, 2014, Defendants articulated for the first time the notion that there is no such thing as a default law requiring refunds. (Reply, p. 8, n.10.) That claim is false. Cal. Civ. Code § 1723 requires sellers to "conspicuously display" signs negating the default "policy … of not giving full cash or credit refunds". Defendants have no such signs that Plaintiff has ever seen, and they do not claim to have any. Over $200,000 is in dispute with respect to goods and services that were paid on layaway and which were never delivered at all. (Woodward Decl. ¶ 17.) Layaway payments are refundable on demand. Cal. Civ. Code § 1749. These are new and different facts that warrant reconsideration.

## B.     New Or Different Circumstances

**Enrollment Application not enforceable**: There is a contract between Plaintiff and Defendants. But the "Enrollment Application" is not part of that contract. The Enrollment Application is not a contract nor is it enforceable against anyone anywhere for a variety of reasons that Plaintiff briefed in Plaintiff's Opposition to Defendants' Arbitration Motion. In their Antislapp Motion, Defendants had asked the Court to rule upon their Arbitration Motion before ruling on their Antislapp Motion. (See Defendants' Antislapp Motion, p. 1, n. 1.) Plaintiff relied upon that request

MOTION FOR RECONSIDERATION AND FOR LEAVE TO FILE AMENDED COMPLAINT

in preparing his opposition and therefore briefed the enforceability of the Enrollment Application in his Opposition to the Arbitration Motion only. Later, Defendants sandbagged Plaintiff by resurrecting their contentions about the Enrollment Application in their Antislapp Reply. (Woodward Decl. ¶ 18.) Defendants changed the circumstances. Reconsideration is warranted.

**Contract is oral, written and implied by conduct**: Defendants first raised CCP § 430.10(g) – which only provides that a party may demur a suit founded upon a contract if it cannot be ascertained from the pleading whether the contract is written, oral or implied by conduct – in their Antislapp Reply. (Woodward Decl. ¶ 19.)

The at-issue contract is written (Complaint ¶¶ 71-74, 99, 169), is oral (Complaint ¶¶ 71-74, 77-81, 100-01), *and* is implied by conduct (Complaint ¶¶ 76-104). This is ascertainable from the Complaint. A case-dispositive counterfactual finding is a new and different fact or circumstance that warrants reconsideration. It warrants allowing more evidence:

**Oral and written**: numerous oral and written statements made by numerous Defendant representatives regarding Defendants' policy of returning funds on demand; receipts and invoices for payment of funds; price lists; and account statements showing net balances of money paid on layaway for self-help goods and services to be delivered at fixed prices. (Woodward Decl. ¶ 20.)

**Implied by conduct**: asking for and taking money, and providing self-help goods and services at fixed prices. (Woodward Decl. ¶ 21.)

In any event, California liberally allows amendment of pleadings. *Howard v. County of San Diego*, 184 Cal.App.4th 1422, 1428 (2010); CCP § 473(a)(1). Plaintiff moves for leave to amend.

### C. New Or Different Law

**CCP § 430.10(g)**: No case has ever endorsed an antislapp motion on the basis of a complaint being demurrable under CCP § 430.10(g). Nor has any case suggested that antislapp motions should be granted in a situation where it cannot be determined whether the contract is oral, written, or implied by conduct. Therefore, the Court's reliance on CCP § 430.10(g) to grant Defendants' Antislapp Motion is new or different law that warrants reconsideration.

**Justiciability**: This dispute does not concern clergy discipline, nor the management of church property, nor negligence of non-therapist-counselors. Nobody claims otherwise. (Woodward

6

Decl. ¶ 22.) Yet, the cases cited in support of finding that this is a non-justiciable religious arise solely from one of those three scenarios.

None of the cases cited by Defendants or the Court supports the finding that this is a non-justiciable dispute. See *Presbyterian Church in U.S. v. Mary Eliz. Hull Memorial Presbyterian Church*, 393 U.S. 440 (1969) (action by local churches to enjoin general church from trespassing on local church properties; court held that the Constitution forbids civil courts from interpreting church doctrine to award church property); *U.S. v. Ballard*, 322 U.S. 78, 85-88 (1944) (criminal fraud conviction upheld in which the element of falseness was removed from adjudication because the fraudulent statements included statements of religious belief); *Nally v. Grace Community Church*, 47 Cal.3d 278 (1988) (action brought by the parents of a suicide victim against a church and nontherapist counselors alleging negligent failure to prevent decedent's suicide; court found that "nontherapist counselors" have no duty to prevent suicide); *Maxwell v. Brougher*, 99 Cal.App.2d 824 (1950) (action by church member for declaratory and other relief respecting internal management of affairs of church corporation; court held that courts of law have no jurisdiction to interfere with the internal disciplinary matters of a religious corporation); *Schofield v. Super. Ct.*, 190 Cal.App.4th 154, 162 (2010) (national church brought action against breakaway group that was in possession and control of diocese property; court held that dispute as to who is the rightful bishop is not justiciable in civil courts **but that church-property dispute may be adjudicated by the civil courts according to neutral principles of law**); *Jones v. Wolf*, 443 US 595 (1979) (dispute over ownership of church property following schism in local church; **court held that civil courts may adjudicate the dispute according to neutral principles of law**); and *Episcopal Church Cases*, 45 Cal.4th 467, 473 (2009) (action concerning allocation of church property after local church disaffiliated; **court held that the lawsuit did not arise from protected activity for antislapp purposes and that the court could adjudicate the church-property dispute**). These cases are not analogous to this lawsuit. Citing exclusively to cases for conclusions that those cases do not support – especially on the critical issue of justiciability – is new or different law that warrants reconsideration.

MOTION FOR RECONSIDERATION AND FOR LEAVE TO FILE AMENDED COMPLAINT

Moreover, the last three cases in the list stand for the opposite proposition for which they were cited. They hold that church-property disputes may be adjudicated according to neutral principles of law. This lawsuit is not even a church-property dispute; nobody contends otherwise. (Woodward Decl. ¶ 22.) And even if it were a church-property dispute, the case law unanimously holds that civil courts may adjudicate it according to neutral (i.e. non-religious) principles of law. A finding that contradicts well-settled case law – especially on the critical issue of justiciability – is new or different law that warrants reconsideration.

Indeed, Plaintiff complains of Defendants' speech acts: inducement, conduct, and oral and written statements of refund policy. Furthermore, Plaintiff complains that Defendant COSSF emotionally harmed Plaintiff through practices that involved utterances. (Woodward Decl. ¶ 23.) But religious speech is nothing but speech. Religious speech enjoys no greater protection than secular speech. *Capitol Sq. Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995). And freedom of speech is not unlimited. *Robertson v. Baldwin*, 165 U.S. 275, 281 (1897).

That speech is involved in certain Scientology practices does not render this dispute non-justiciable; for the reverse would lead to the consequence that anybody could escape claims of fraud, intentional infliction of emotional distress and breach of contract by simply claiming that their verbal or written acts were ones of unassailable religious expression or belief. That is not the law. The law is: when a statement of religious belief constitutes the inducement element of fraud, the falseness element is removed from consideration. See *U.S. v. Ballard*, 322 U.S. 78 (1944) (upholding a criminal fraud conviction based on fraudulent statements of inducement that were also statements of religious belief). None of the counts asserted or that Plaintiff intends to assert depend on the truth or falseness or religious beliefs. This is a fraud-breach-abuse dispute between privately contracting parties. It does not concern the validity of religious beliefs. The Court's decision – that Plaintiff's conversion-contract-fraud-duress claims raise no judiciable dispute – denies Plaintiff his Constitutional Due Process. It is new or different law that warrants reconsideration.

**All agree there is a contract**: Defendants do not dispute the existence of a contract between Plaintiff and Defendants. The parties dispute the terms of the contract only. (Woodward Decl. ¶ 24.) The contract terms are a factual dispute that could not be resolved even on summary judgment (for

8

which Plaintiff would have been afforded 61 days to oppose, under CCP § 437c) much less by way of an antislapp motion (for which Plaintiff was afforded 13 calendar days to oppose). (Woodward Decl. ¶ 25.) In any other conceivable situation, Plaintiff would be entitled to conduct discovery to prove his case. This is true even when a fully reduced contract is not even facially ambiguous. *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33 (1968); CCP § 437c(h). Resolving a case-dispositive factual dispute by way of an antislapp motion deprives Plaintiff of Due Process. It warrants reconsideration.

**Similar only as to shift of burden, not weight of burden**: The Court stated in its Ruling at p. 2: "Because Defendants have established that Plaintiff's action arises from protected activity, the burden shifts to Plaintiff to present admissible evidence that supports a prima facie case in his favor, much like the burden on a motion for summary judgment or directed verdict." This is ambiguous.

It appears the Court may have applied the substantive burden applicable to summary judgment motions ("MSJs"). But the case law only draws a similarity between MSJs and antislapp motions in terms of procedure, not the weight of the burden. Regarding antislapp motions, "the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation." *Varian Medical Sys., Inc. v. Delfino*, 35 Cal.4th 180, 192 (2005). See also *Taus v. Loftus*, 40 Cal.4th 683, 713-14 (2007) (a plaintiff need only "state and substantiate a legally sufficient claim," not prove it outright).

The antislapp standard is much lower. A plaintiff enjoys "a degree of leeway in establishing a probability of prevailing on its claims due to 'the early stage at which the [antislapp] motion is brought and heard … and the limited opportunity to conduct discovery.'" *Integrated Healthcare Holdings v. Fitzgibbons*, 140 Cal.App.4th 515, 530 (2006). The standard is "minimal merit." See *Navellier v. Sletten*, 29 Cal.4th 82, 93-94 (2002).

Plaintiff was afforded 13 calendar days or 9 business days (from May 29, 2014, to June 11, 2014) to prepare his oppositions to both Defendants' motions. (Woodward Decl. ¶ 25.) There was no opportunity for discovery. To the extent the Court's ruling on Defendants' Antislapp Motion applied the same substantive burden of proof as applies to MSJs, such application deprives Plaintiff of Due Process. It warrants reconsideration.

9

MOTION FOR RECONSIDERATION AND FOR LEAVE TO FILE AMENDED COMPLAINT

## II.   EXPLANATION FOR FAILING TO PRESENT THE EVIDENCE SOONER

A "party seeking reconsideration of a prior order based on 'new or different facts' must provide a satisfactory explanation for failing to present the evidence sooner." *Cal. Correctional Peace Officers Ass'n v. Virga*, 181 Cal.App.4th 30, 46, n. 15 (2010). The "information must be such that the moving party could not, with reasonable diligence, have discovered or produced it at the trial." *N.Y. Times Co. v. Super. Ct.*, 135 Cal.App.4th 206, 212-13 (2005).

A "satisfactory explanation" is owed only for "failing to present the evidence sooner." Legally, logically and equitably, the Court should reconsider its prior order if any new or different circumstances *or* any new or different law is present, and especially if that new law is unconstitutional. (See above.) As to failing to present the evidence sooner, this is Plaintiff's explanation in support of reconsideration based on Plaintiff's new or different facts:

Plaintiff cannot afford an attorney to represent him. Plaintiff had 13 calendar days to prepare opposition papers to Defendants' two case-dispositive motions. Plaintiff spent over 100 hours preparing his opposition papers, an average of 8 hours a day for 13 days straight. That is an unreasonable task for a person (Defendants) to be permitted to foist on another person (Plaintiff). Given the circumstances, Plaintiff exercised more than reasonable diligence. Plaintiff would have spent more time on the opposition papers had he been able to. (Woodward Decl. ¶¶ 25-27.)

Moreover, Defendants' bait-and-switch tactic of bringing two motions and dropping one reasonably caused Plaintiff to focus on certain issues in one brief to the exclusion of the other. Plaintiff had no way of knowing the Antislapp motion would take on the significance that it did. (Woodward Decl. ¶ 18.)

## III.   LEAVE TO AMEND

The Court may grant leave to amend. *Nguyen–Lam v. Cao*, 171 Cal.App.4th 858, 865-66 (2009), and *Martin v. Inland Empire Utilities Agency*, 198 Cal.App.4th 611, 424 (2011). California has a policy in favor of liberally allowing amendment. *Howard v. Cnty of San Diego*, 184 Cal.App.4th 1422, 1428 (2010); CCP § 473(a)(1). A grant of leave is appropriate. This dispute does not arise out of Defendants' protected speech, nor out of their public participation.

MOTION FOR RECONSIDERATION AND FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff paid to Defendants over $600,000. Over $400,000 of that was for goods and services on a fixed-fee basis. Through numerous oral and written representations, Defendants articulated to Plaintiff a policy of returning funds on demand. Plaintiff reasonably understood this to be a contract term, and Plaintiff relied on those representations when deciding to contract with Defendants. The parties all understood refund-on-demand to be a contract term. The parties all understood that Plaintiff would be legally entitled to a refund on demand. Defendants' unenforceable Enrollment Application cannot overcome the dozens or even hundreds of times that Defendants represented that refunds are available. Nobody ever informed Plaintiff otherwise. (Woodward Decl. ¶ 28.)

Defendants delivered some of the goods and service, nominally valued at around $200,000. Plaintiff was harmed by the services that Defendant COSSF delivered. Defendants did not deliver over $200,000 of goods and services, money that Plaintiff paid on layaway or, in the lingo, "has on account." Plaintiff asked for his money back. Defendants refuse to give it back. Defendants do not dispute any one of these facts. Defendants do not dispute there is a contract. They merely dispute the terms of that contract. (Woodward Decl. ¶ 29.)

Plaintiff seeks a return of his money and compensation for damage that the Defendants caused him through their practices. (Woodward Decl. ¶ 30.) Accordingly, Plaintiff seeks leave to file an amended complaint.

## IV.   CONCLUSION

Religious status is not a carte blanche. Plaintiff requests that the Court (1) grant this Motion, (2) revoke its 10/8/14 Ruling, (3) deny Defendants' Antislapp Motion and find that CCP § 425.17(c) applies, and (4) grant Plaintiff leave to file an amended complaint. A tolling agreement may impact the procedure. (Woodward Decl. ¶ 31, Ex. VWD-19.)

October 20, 2014.

Vance Woodward
Plaintiff

MOTION FOR RECONSIDERATION AND FOR LEAVE TO FILE AMENDED COMPLAINT